# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOROTHY M. THOMPSON, et al., | Hon. Zahid N. Quraishi, U.S.D.J. |
| | Hon. Rukhsanah L. Singh, U.S.M.J. |
| Plaintiffs, | |
| | Civil Action No. 3:24-CV-6295-ZNQ-RLS |
| v. | |
| CONSTANCE LUDDEN, et al., | Motion Day: July 3, 2025 |
| Defendants. | |

**REPLY MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS THE CITY OF TRENTON, CONSTANCE LUDDEN, THE TOWNSHIP OF LAWRENCE, AND SUSAN E. McCLOSKEY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. PRO. 12(B)**

**MURPHY ORLANDO LLC**
Jason F. Orlando, Esq. (#016482000)
Arthur R. Sypek, Esq. (#008341974)
494 Broad Street, 5th Floor
Newark, NJ 07102
201.451.5000
*Attorneys for Defendants the City of Trenton, Constance Ludden, the Township of Lawrence, and Susan E. McCloskey*

*On the Brief:*

    John W. Bartlett (#023042001)
    Adelin Sheynov, Esq. (#441332023)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.       Contrary To Plaintiffs' Arguments, The Restrictions Of "Pipeline Retroactivity" Bar Plaintiffs' Takings And Excessive Fines Claims. ........................................................... 2

    II.      No Binding Precedent Supports Plaintiffs' Inequitable Argument That Municipalities Should Be Forced To Disgorge Money They Never Received. ...................................... 9

    III.     Plaintiffs Concede That Dismissal Of Their Tort And Unjust Enrichment Claims, And Of The Individual Defendants. ........................................................................................11

    IV.     Adoption of Co-Defendants Arguments. ...................................................................... 12

CONCLUSION ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Federal Cases**

Bembry v. Twp. of Mullica, CV 16-15734 (JBS-JS), 2017 WL 3033126 (D.N.J. July 17, 2017),
    aff'd, 749 Fed. Appx. 123 (3d Cir. 2018) ................................................................ 8

Collins v. City of Wichita, 254 F.2d 837 (10th Cir. 1958) ............................................... 5

Cont'l Res. v. Fair, 10 N.W.3d 510 (Neb. 2024) ........................................................... 10

Davenport v. Town of Reading, No. CV 22-12239-RGS, 2024 WL 4495105 (D. Mass. Oct. 15,
    2024) ..................................................................................................................... 7

D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983) ......................................................... 5

FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015) ................................. 6

George v. McDonough, 596 U.S. 740 (2022) ................................................................. 4

Gibson v. Am Cyanamid Co., 760 F.3d 600 (7th Cir. 2014) ............................................ 6

Gillman v. Waters, McPherson, McNeil, P.C., 271 F.3d 131 (3d Cir. 2001) .................. 6

Grady v. Wood Cnty., W. Va., No. 2:24-CV-00214, 2025 WL 72160
    (S.D.W. Va. Jan. 10, 2025) ............................................................................... 7, 10

Harper v. Va. Dep't of Tax'n, 509 U.S. 86 (1993) ................................................. *passim*

Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229 (1984) ............................................... 10-11

Howard v. Wells Fargo Bank, N.A., 733 F. Supp. 3d 352, aff'd, 24-2010, 2024 WL 4890984
    (3d. Cir. Nov. 26, 2024) ......................................................................................... 8

In re Curry, 493 B.R. 447 (Bankr. D.N.J. 2013) ............................................................. 2

In re Knapper, 407 F.3d 573 (3d Cir. 2005) .................................................................... 5

In re Miranda, 667 B.R. 386 (Bankr. E.D.N.Y. 2025), aff'd sub nom. Miranda v. TLB 2019 LLC,
    No. 25-CV-533 (ENV), 2025 WL 1530575 (E.D.N.Y. May 29, 2025) ................. 8

In Re Virealla, 661 B.R. 199 (Bankr. D.N.J. 2024) ............................................................................ 6

Istvanik v. Rogge, 50 Fed. Appx. 533 (3d Cir. 2022) ........................................................................ 4

Kelo v. City of New London, 545 U.S. 469 (2005 ........................................................................... 10

Lemon v. Kurtzman, 411 U.S. 192 (1973) ......................................................................................... 9

Linkletter v. Walker, 381 U.S. 618 (1965) ........................................................................................ 9

Miller v. Cathel, CV 06-6116 (JBS), 2016 WL 471839 (D.N.J. Sept. 9, 2016) ................................ 6

Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995) ........................................................... passim

Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923) ..................................................................................... 5

Schafer v. Kent Cnty., No. 164975, 2024 WL 3573500 (Mich. July 29, 2024) ................................ 5

Sevinsky v. Cnty. of Cattaraugus, No. 24-CV-00186-JLS-HKS, 2025 WL 1400724
    (W.D.N.Y. Apr. 8, 2025), report and recomm. Adopted, No. 24-CV-186 (JLS) (HKS),
    2025 WL 1399144 (W.D.N.Y. May 14, 2025) .......................................................................... 7

Sharritt v. Henry, No. 23-C-15838, 2024 WL 4524501 (N.D. Ill. Oct. 18, 2024) ..................... 7, 11

Stephanatos v. Wayne Twp., No. 12-cv-1793, 2024 WL 1757061 (D.N.J. April 4, 2024) .......... 6-7

Tyler v. Hennepin County, 598 U.S. 631 (2023) ........................................................................ passim

Vasquez v. Glover, CIV. 09-2593 KSH, 2011 WL 1321631 (D.N.J. Mar. 30, 2011) ...................... 6

Vick v. Sherrer, CIV.A.06-5301, RMB, 2007 WL 2688888 (D.N.J. Sept. 12, 2007) ...................... 6

**State Cases**

257-261 20th Ave. Realty v. Roberto, 477 N.J. Super 399 (App. Div. 2023),
    affirmed as modified, 259 N.J. 417 (2025) ....................................................................... passim

Bron v. Weintraub, 42 N.J. 87 (1964) ............................................................................................ 2, 6

In re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52 (2014) ............ 2

Matter of A. Fiore & Sons, Inc., 305 N.J. Super. 192 (App. Div. 1997),
  aff'd sub nom, 158 N.J. 105 (1999) ................................................................................ 4

SL RE1, LLC v. Est. of Hoshowsky, No. A-1242-23, 2025 WL 1498969 (App. Div. May 27,
  2025) ............................................................................................................................... 7

State v. Knight, 145 N.J. 233 (1996) ............................................................................................ 4

State v. Dock, 205 N.J. 237 (2011) .......................................................................................... 4-5

**Federal Statutes and Rules**

28 U.S.C. §§ 1331 ...................................................................................................................... 11

28 U.S.C. §§ 1367 ...................................................................................................................... 11

FED. R. CIV. PRO. 12(b)(6) ................................................................................................. *passim*

**State Statutes**

New Jersey Tax Sale Law, L. 1918 c. 237 ................................................................................... 9

New Jersey Tax Sale Law, L. 2024 c. 39 ................................................................................. 2, 3

N.J.S.A. 54:5-3 .......................................................................................................................... 2, 3

N.J.S.A. 54:5-19 ......................................................................................................................... 11

N.J.S.A. 59:3-2 ........................................................................................................................... 12

N.J.S.A. 59:8-8 ........................................................................................................................... 12

The Trenton Defendants and the Lawrence Defendants,[1] having renewed [Dkt. 65] their motion to dismiss originally filed September 12, 2024 [Dkt. 29], respond to Plaintiffs' opposition [Dkt. 47] and post-opposition submissions of supplemental authority [Dkt. 48, 55], as follows.

## PRELIMINARY STATEMENT

In this civil action, Plaintiffs ask the District Court to extend the Supreme Court's ruling in Tyler v. Hennepin County, 598 U.S. 631 (2023), by stretching it outwards in meaning and backwards in time. Such expansion is the only way Plaintiffs' claims can be salvaged. However, what Plaintiffs asks the Court to do is inappropriate and unnecessary, and would rob litigants and property owners of finality achieved years ago in New Jersey state Courts.

In opposition, Plaintiffs overstate the facts of their individual cases and misstate New Jersey law on key issues. In the very first line of their opposition, for example, Plaintiffs say "[t]his case involves . . . seizures by New Jersey municipalities of property from private owners . . ." [Pb1; see also Pb13 (falsely stating that "*the government took [Plaintiffs' properties] from the Plaintiffs and gave them to the foreclosers*")]. On the contrary, Defendant did not "seize" or "take" Plaintiffs' "property," they issued tax sale certificates as required annually by New Jersey law; all subsequent proceedings against Plaintiffs were carried out by the purchasers of those certificates. If, as Plaintiffs argue, they are at bar because "the government transferred their properties," then it is the Superior Court of New Jersey and not these municipalities against whom Plaintiffs have claims, because it was the final judgments in foreclosure that transferred Plaintiffs' properties. [Pb2].

While this is a motion for dismissal, and the issue of class certification has not yet been joined, just the five Plaintiffs named in the Amended Complaint show the challenge ahead: Ms. Knight-Capes thought she lived in Trenton when her home was actually in Hamilton, resulting

---

[1] Capitalized terms have the same meaning as ascribed in Movants' opening brief. [Dkt. 29-1].

1

in the withdrawal of her claim, and Ms. Sherrod-Polan stipulated to the foreclosure of her home seven years ago but joined this action anyway. The impossibility of qualifying this or any given group of plaintiffs as satisfactory class representatives is obvious.

Plaintiffs have sued Defendants, which are creations of New Jersey law, for carrying out a task prescribed for them in that very law. Plaintiffs' own claims have already been disposed with finality. The N.J. Supreme Court's moratorium on tax certificate foreclosures, in tandem with the Legislature's adoption of amendments to the N.J. Tax Sale Law ("TSL"), protects present and future property-owners at risk of unconstitutional takings. The number of New Jersey property-owners with extant claims under Tyler is thus vanishingly small, if any, and it includes none of the Plaintiffs. The Court should therefore grant this motion to dismiss the Amended Complaint.

## LEGAL ARGUMENT

### I. Contrary To Plaintiffs' Arguments, The Restrictions Of "Pipeline Retroactivity" Bar Plaintiffs' Takings And Excessive Fines Claims.[2]

No party disputes that a property owner facing foreclosure **today** in connection with a New Jersey tax sale certificate is entitled to the opportunity to recover "the surplus value over-and-above the back taxes" owed. That is the law of the land under Tyler; under the New Jersey Supreme Court's recent ruling in 257-261 20th Ave. Realty, LLC v. Roberto, 259 N.J. 417, 448 (2025)

---

[2] Plaintiffs have at various points asserted that "Defendants do not appear to challenge" their excessive fines claims. [E.g., Dkt. 55, at 2; Dkt. 47, at 1]. To the contrary, here and in Defendants' opening brief we demonstrate why **none** of Plaintiffs' constitutional claims—under the Takings Clause or the Excessive Fines Clause—are subject to alteration on collateral review. [See Dkt. 29-1 at § II.-III.]. Moreover, the fact that the TSL and proceedings thereunder lack any punitive purpose makes "Excessive Fines" relief unavailable to Plaintiffs. See, e.g., N.J.S.A. 54:5-3 (Tax Sale Law is "a remedial statute" with "remedial objects"); In re Princeton Office Park L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 65-66 (2014) ("The statute is 'a remedial statute . . .'" and its "legislative purpose is to 'aid municipalities in raising revenue'") (quoting Bron v. Weintraub, 42 N.J. 87, 91-91 (1964) and citing other cases); In re Curry, 493 B.R. 447, 451 (Bankr. D.N.J. 2013) (the "provisions of the Tax Sale Law make it evident that the process created by the statute has but one goal—the collection of taxes"). Finally, Tyler did not rule on the plaintiff's claim under the Excessive Fines Clause. Tyler, 598 U.S. at 647.

("Roberto"); and under the amended New Jersey Tax Sale Law, L. 2024 c. 39 ("TSL"). But that is not the question presented in Plaintiffs' Amended Complaint or Defendants' motion to dismiss.

The two remaining Plaintiffs[3] whose claims are directed at Trenton and Lawrence lost their properties in foreclosure years ago. [Am. Complt., ¶¶ 34, 36; Exs. B, C]. The plain language of the amended TSL provides that it "shall have no effect on any foreclosure action in which a final judgment has been entered prior to the effective date of this act," L. 2024, c. 39, § 11, and nothing in Federal or New Jersey case law requires the Court to extend Tyler years into the past to capture cases already resolved to finality. Compare Roberto, 259 N.J. at 441–42 ("[T]he trial court vacated the final judgment of foreclosure, and plaintiff appealed . . . As a result, this case is not final; it is still pending. We therefore agree with the Appellate Division that Tyler applies to this appeal . . .").

Both sides quote Harper v. Virginia Dep't of Tax'n, 509 U.S. 86 (1993) in their briefs— Defendants emphasizing the first part of this sentence, and Plaintiffs emphasizing the second part:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review **and** as to all events, regardless of whether such events predate or postdate our announcement of the rule.

509 U.S. at 97 (emphasis added). The essential but easily ignored word in this important sentence is the "**and**." The word "and" makes the requirements conjunctive—thus requiring that an aggrieved property owner's case be "still open on direct review" in order for rulings like Tyler to apply "retroactively." Only this interpretation can be squared with how Harper has been read by other Courts, including the Supreme Court itself just two years later. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995) ("when (1) the Court decides a case and applies the (new) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (new) legal rule as 'retroactive,' applying it, for example, to all **pending** cases, whether or not those cases

---

[3] Karin Knight-Capes voluntarily dismissed her claims against Trenton. [Dkt. 44].

involve predecision events.") (emphasis added).

In other words, Plaintiffs are correct that the ruling in Tyler can be applied to "events [that] predate . . . announcement of the rule." [See Pb6]. That's exactly what occurred in Tyler itself, and in cases like Roberto. But **Defendants are also correct** that Tyler's ruling may be applied only "in . . . cases still open on direct review." Id.; Roberto, 259 N.J. at 441–42 (where trial court vacated final judgment of foreclosure, plaintiff appealed, and appeal was pending when Tyler was decided, "this case is not final; it is still pending"); Reynoldsville, 514 U.S. at 758 (**"new legal principles, even when applied retroactively, do not apply to cases already closed"**) (emphasis added); see George v. McDonough, 596 U.S. 740 (2022) (in veterans' disability benefits case, plaintiff's challenge, brought based upon new Circuit Court ruling rejecting interpretation of rule that had led to plaintiff's original denial, was properly denied based upon finality of original determination); Istvanik v. Rogge, 50 Fed. Appx. 533, 536 (3d Cir. 2002) ("when [the Court] announces a new rule in a civil case it is to be applied to **all cases which are on direct appeal**") (emphasis added); Matter of A. Fiore & Sons, Inc., 305 N.J. Super. 192, 204–05 (App. Div. 1997), aff'd sub nom. In re A. Fiore & Sons, Inc., 158 N.J. 105 (1999) (Harper requires "retroactive application **to pending cases** of newly-announced . . . interpretation of federal constitutional rules") (emphasis added); see also State v. Knight, 145 N.J. 233, 249 (1996) (pipeline retroactivity refers to three types of cases: the one in which the rule is announced; those pending, including ones "still on direct appeal" from the final judgment; and future cases). Collateral attacks like this one are outside the scope of these requirements. Cf., e.g., State v. Dock, 205 N.J. 237, 254-59 (2011) (criminal defendant cannot use the "collateral review" of a PCR petition to benefit from a new principle of constitutional law if direct appeals of his conviction have been exhausted); see generally In re Knapper, 407 F.3d 573, 580-81 (3d Cir. 2005) (where a "federal claim is

4

inextricably intertwined with [a prior] state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong . . . Rooker–Feldman[4] bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims").

Thus, applying only "controlling federal law," including Harper and Reynoldsville, the N.J. Supreme Court in Roberto, 259 N.J. at 441, left undisturbed the Appellate Division's conclusion that the pre-amendment TSL "is a prohibited taking **after Tyler**." 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 399, 362 (App. Div. 2023), affirmed as modified, 259 N.J. 417 (2025) (emphasis added). Even cases on which Plaintiffs rely support this conclusion. See, e.g., Schafer v. Kent Cnty., No. 164975, 2024 WL 3573500, at *12 (Mich. July 29, 2024) ("Respecting **traditional standards of procedure and the interest of finality**" allows application state-law analogue to Tyler "to cases **that are not yet final** or to timely filed claims . . .") (emphasis added).

Further, litigants in long-ago foreclosure adjudications and present-day property owners are entitled to the benefit of finality. See, e.g., Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958) ("litigation must end some time ... [and] that there may have been a judicial change in the court's view of the law after its entry [of judgment], does not justify setting it aside."). Defendants, as taxing authorities, cf. Roberto, 259 N.J. at 431, 441-42 (noting that Appellate Division had "reasoned that 'full retroactivity would be unworkable and create a substantial hardship for taxing authorities' and third-party purchasers alike"), likewise have a due process right to certainty and finality that applies here. See FTC v. Wyndham Worldwide Corp., 799 F.3d 236, 249-50 (3d Cir. 2015) (under Due Process clause, parties must have "fair notice" before they can be held liable for conduct); Gibson v. Am Cyanamid Co., 760 F.3d 600, 622 (7th Cir. 2014) ("There are indeed Due Process limits on the retroactive application of a judicial decision . . .").

---

[4] Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983).

This is particularly true where they are being called upon to compensate Plaintiffs for value the municipal Defendants did not receive and do not hold. Plaintiffs' approach—to allow a Constitutional challenge today to foreclosures finalized years or even decades ago under the TSL—would offend basic principles of fair notice, especially where the distinguishing feature of these cases, strict foreclosure, had received the imprimatur of New Jersey's highest Court more than 60 years ago. See Bron v. Weintraub, 42 N.J. 87, 91-92 (1964).

Whether or not the Court chooses to use the phrase "pipeline retroactivity," which Plaintiffs assert is a New Jersey concept not applicable in the federal Courts [Pb1],[5] the law provides some limit beyond which the Courts cannot reach back and change the outcome of completed disputes. In tax certificate foreclosure cases and others like them, that limit has consistently been established by the phrase "open on direct review." See, e.g., Roberto, supra (both Appellate Division and N.J. Supreme Court rulings); Stephanatos v. Wayne Twp., No. 12-cv-1793, 2024 WL 1757061, *2 (D.N.J. April 4, 2024); see also SL RE1, LLC v. Est. of Hoshowsky, No. A-1242-23, 2025 WL 1498969, at *6 (App. Div. May 27, 2025) (where plaintiff estate's case was not "pending review at the time of Tyler . . . "[t]he Estate's filing of a motion to vacate a year after the entry of the final judgment does not place the present matter within the class of pending cases"). Of the decisions

---

[5] But see numerous federal cases, including Gillman v. Waters, McPherson, McNeil, P.C., 271 F.3d 131, 139 (3d Cir. 2001) ("In sum, we conclude that the 'pipeline retroactivity' called for by the Olds court requires the application of Olds to Gillman's claim); In re Virealla, 661 B.R. 199, 215 (Bankr. D.N.J. 2024) (observing that Tyler wrought a "substantial change in law" and that because "Debtor[] had a pending cause of action at the time Tyler and Roberto were handed down . . . he is entitled to pipeline retroactivity in order to continue his challenge of the alleged taking of his excess equity"); Miller v. Cathel, CV 06-6116 (JBS), 2016 WL 4718139, at *8 (D.N.J. Sept. 9, 2016) ("As Petitioner's direct appeal had concluded by the time Blakely was decided in 2004, he was not in the 'pipeline' for retroactivity purposes"); Vasquez v. Glover, CIV. 09-2593 KSH, 2011 WL 1321631, at *10 (D.N.J. Mar. 30, 2011) ("Since petitioner's case was not in the direct appeal pipeline as of August 2, 2005, Natale II decision (his petition for certification to the New Jersey Supreme Court was denied on February 16, 2005), his sentencing claims under this line of cases is not reviewable"); Vick v. Sherrer, CIV.A.06-5301 RMB, 2007 WL 2688888, at *7 (D.N.J. Sept, 12, 2007) ("In this case, Petitioner's case was not in the direct appeal pipeline as of the 2005 Natale decision, but was in the collateral review pipeline at the time").

that go beyond that limit, (a) some are not takings cases, (b) some have different procedural postures or are premised upon issues other than "pipeline retroactivity," and (c) none are binding here. See, e.g., Davenport v. Town of Reading, No. CV 22-12239-RGS, 2024 WL 4495105, at *2 (D. Mass. Oct. 15, 2024) (where plaintiff's property was sold in 2014, but denial of request for excess proceeds did not occur until 2023, allowing plaintiff's claim to proceed because "his claim is not that the Town violated the Fifth Amendment by seizing the Property" but rather for "deprivation [that] only occurred in January of 2023, when, having sold the Property, the Town refused to convey any surplus funds to" plaintiff); Sevinsky v. Cnty. of Cattaraugus, No. 24-CV-00186-JLS-HKS, 2025 WL 1400724, at *1 (W.D.N.Y. Apr. 8, 2025), report and recomm. adopted, No. 24-CV-186 (JLS) (HKS), 2025 WL 1399144 (W.D.N.Y. May 14, 2025) (allowing claims brought in 2024, arising out of 2020 takings, to proceed where "**the County sold the properties** at auction for sums exceeding the taxes and penalties owed; **and . . . the County failed to return the surplus funds** to plaintiffs") (emphasis added); Sharritt v. Henry, No. 23-C-15838, 2024 WL 4524501 (N.D. Ill. Oct. 18, 2024) (opinion not specifying dates on which plaintiffs' loss of title to their properties occurred). Likewise, Grady v. Wood Cnty., W. Va., No. 2:24-CV-00214, 2025 WL 72160 (S.D.W. Va. Jan. 10, 2025), is inapposite for numerous reasons. See infra, at 10.

Plaintiffs seem to argue that because this case is now pending, it somehow functions as the "timely" pending case "brought after Tyler." [Pb11]. Applying that bootstrapping theory would eviscerate any ability of the Court to draw a line between timely and untimely applications.

On the other hand, if, as Plaintiffs also argue [Pb9, 11], the right enunciated in Tyler was always available to Plaintiffs, then they are subject to an "entire controversy" bar: Having fully adjudicated, or had the opportunity to fully adjudicate, their rights in their now-concluded foreclosure actions, and having failed to argue that the Takings Clause of the U.S. Constitution

prevented the foreclosure or required compensation for their excess equity, they cannot now assert those claims or defenses in a collateral proceeding. Howard v. Wells Fargo Bank, N.A., 733 F. Supp. 3d 352 (D.N.J. 2024), aff'd, 24-2010, 2024 WL 4890984 (3d Cir. Nov. 26, 2024) (holding that constitutional claims were an effort to re-litigate prior foreclosure action in state court and thus barred by claim preclusion); Bembry v. Twp. of Mullica, CV 16-5734 (JBS-JS), 2017 WL 3033126, at *3 (D.N.J. July 17, 2017), aff'd, 749 Fed. Appx. 123 (3d Cir. 2018) ("Plaintiff's constitutional and statutory claims challenge the Township's 'right to foreclose' and could have been raised before the Superior Court. Because the entire controversy doctrine operates to bar 'not only claims that were brought in the previous action, but also claims that could have been brought,' Plaintiff is not permitted to relitigate these questions in this Court, even with new labels attached.") (citations omitted); see also In re Miranda, 667 B.R. 386, 397 (Bankr. E.D.N.Y. 2025), aff'd sub nom. Miranda v. TLB 2019 LLC, No. 25-CV-533 (ENV), 2025 WL 1530575 (E.D.N.Y. May 29, 2025) (claimant "barred from challenging the Transfer as an unconstitutional taking of her equity in the Property" under Tyler because she "could have raised the unconstitutional takings claim in the underlying Quiet Title Action but failed to do so"). This is particularly true of Ms. Sherrod-Polan, the only Plaintiff suing Lawrence Township, who stipulated to the judgment in her foreclosure and did not redeem within the time allowed. [Dkt. 29-1 at § V].

Finally, there are strong policy arguments against the unbridled retroactivity Plaintiffs seek. "[T]he effect of a given constitutional ruling on prior conduct . . . depends upon a consideration of 'particular relations . . . and particular conduct . . . of rights claimed to have become vested, of status, of prior determinations deemed to have finality'; and 'of public policy in the light of the nature both of the statute and of its previous application." Lemon v. Kurtzman, 411 U.S. 192, 198–99 (1973) (quoting Linkletter v. Walker, 381 U.S. 618, 627 (1965)). Here, a host of public and

8

private stakeholders have relied on a tax lien foreclosure system that has been the *status quo* for more than 106 years. See L. 1918, c. 237. Municipalities have relied upon its provisions as a key component of budgeting and fiscal stability. Innumerable foreclosure actions have taken place, such that a sudden onslaught of Tyler-based claims for properties foreclosed upon years, or even decades, ago, would result in chaos for municipalities, property-owners, and the Courts. Moreover, any extension of a finding of unconstitutionality to cases in which a final judgement of foreclosure has been entered could undermine the stability and marketability of titles to real property in literally every corner of the state. (Recall that the proposed plaintiffs' class is every former homeowner who asserts lost value arising out of a tax certificate sale, and the proposed class of defendants is every municipality in New Jersey. [Complt., ¶¶ 53-77].)

Plaintiffs' foreclosures having reached final judgment months or years before Tyler, they were closed and final at the time Tyler was decided and Plaintiffs may not revive them through this collateral challenge. Dismissal of Plaintiffs' constitutional claims is therefore warranted.

**II.   No Binding Precedent Supports Plaintiffs' Inequitable Argument That Municipalities Should Be Forced To Disgorge Money They Never Received.**

Like it or not, Plaintiffs' claims differ from those in Tyler, where Hennepin County itself foreclosed upon the homeowner and retained the resulting excess equity. Plaintiffs now ask this Court to extend Tyler to foreclosures undertaken by private entities—which enjoy the benefit of any excess equity—but to charge New Jersey's municipal governments for Plaintiffs' damages.[6] There are no precedential cases, or any binding upon this Court, that support this extension of

---

[6] Plaintiffs attempt to play Defendants against one another by saying, "Defendants concede that at least one plaintiff . . . was foreclosed by government entities, so the complaint could not be dismissed on this ground." [Pb12, citing Dkt. 29-1 at 9 n.4]. Far from Plaintiff's interpretation, the referenced footnote emphasizes that the Movants here—Lawrence and Trenton—did **not** foreclose on their corresponding Plaintiffs, Ms. Sherrod-Polan and Ms. Thompson. Thus, the Amended Complaint absolutely "could . . . be dismissed" against Trenton and Lawrence "on this ground."

Tyler. Instead, Plaintiffs offer a handful of unreported District or Bankruptcy Court cases, arising in other States under other statutory schemes for the resolution of tax liens. For example, the West Virginia case Plaintiffs provided as supplemental, Grady, supra, offers them no support. The Grady Court did not address—because Wood County apparently did not argue—the question of whether a taxing authority can be liable for a taking committed by a private lienholder. See 2025 WL 72160. It also arose under West Virginia law, a non-judicial foreclosure system where the county simply issues a tax deed after the expiration of the redemption period, and involved a unique fact situation where Wood County's administrative error of applying redemption funds to the wrong property formed a basis of the plaintiff's claim. See id.

Sharritt v. Henry also involves a different process. In Illinois, "Defendants 'confiscate' all of a delinquent property owner's property when they transfer title to a tax buyer pursuant to the Illinois Tax Code." 2024 WL 4524501, at *11. In other words, "Plaintiffs ultimately render *the entire value* of their properties unto Caesar, who in turn renders it unto Antony." Id. New Jersey's process is different: Unlike Illinois and West Virginia, there are no tax deeds; the municipality does not take title at any point when there is a private lienholder involved. Rather, Defendants' involvement was over once the lien was sold; title was only transferred upon entry of final judgment, and only to the foreclosing plaintiff—here, a private lienholder. See N.J.S.A. 54:5-87.

Moreover, as Plaintiffs admit, the Nebraska high court in Cont'l Res. v. Fair, 10 N.W.3d 510 (Neb. 2024), identified "the private foreclosure" and not the municipal government as "the liable party." [Pb15 n.3]. Just as important for understanding Fair, the private foreclosure was a party in that action; by contrast, Plaintiffs here have not impleaded the entities that actually received any excess value (none being admitted) of their foreclosed properties. See id., 395-96.

None of Plaintiffs' other cases provides the sort of direct answer they imply. The question

in Kelo v. City of New London involved eminent domain in municipal redevelopment, not tax sales "executed outside the confines of an integrated development plan." 545 U.S. 469, 487 (2005). Nor was "the measure of just compensation" before the Court. Id. at 489 n.21. Hawaii Hous. Auth. v. Midkiff answered the question of whether "property taken outright by eminent domain" and "transferred in the first instance to private beneficiaries" might nevertheless satisfy the requirement that takings be for a "public purpose." 467 U.S. 229, 243 (1984). "The adequacy of compensation [was] not before" the high Court, id., at 234 n.2, nor was the locus of responsibility for any such compensation. Further, the argument that "alleg[ing] a taking is even easier under the New Jersey Constitution" [Pb14] is irrelevant; if Plaintiffs' claim does not sound under the U.S. Constitution then this Court need not exercise jurisdiction. See 28 U.S.C. §§ 1331, 1367.

Finally, Plaintiffs' argument that Defendants had the option not to undertake the tax sales is simply false. N.J.S.A. 54:5-19 **requires** municipalities to hold at least one tax certificate sale per year; Defendants could not have abstained from this duty as Plaintiffs imply. [Pb20]. Sharritt—which Plaintiffs quote for the proposition that Defendants "are not" being sued "[f]or any act . . . that state law compelled them to do"—is thus even further distinguishable. [Id.]. Plaintiffs' rhetorical flourish, that somehow Defendants could have "voluntar[il]y" performed their tax certificate sale function in a manner other than New Jersey law provides, is unworthy of response, making their appeal to Polizzi equally unhelpful. [Pb21].

For all these additional reasons, Plaintiffs' Verified Complaint should be dismissed.

### III. Plaintiffs Concede Dismissal Of Their Tort And Unjust Enrichment Claims, And Of The Individual Defendants.

Plaintiffs "do not contest the dismissal" of their tort claims; they also concede that "the official capacity defendants" may be dismissed from this action and that "injunctive relief is no longer possible." [Pb30-32]. These dismissals should be effectuated by the Court

11

in its ruling on these motions, for the reasons set forth in Defendants' opening brief. Specifically, Plaintiffs' tort claims should be dismissed **with** prejudice because Plaintiffs' procedural failures leave them "forever barred" under the N.J. Tort Claims Act, and because of the individual Defendants' immunities under the same law. See N.J.S.A. 59:3-2, 59:8-8.

### IV.   Adoption of Co-Defendants Arguments.

To whatever extent the arguments of any other Defendant, in its opening papers, on reply, or at oral argument, applies to the advantage of the Trenton or Lawrence Defendants, Defendants hereby adopt such arguments and incorporate them herein by reference.

### CONCLUSION

For each of the reasons set forth in Defendants' opening papers and herein, this motion to dismiss Plaintiffs' Amended Complaint should be granted in its entirety, with prejudice.

> Respectfully submitted,
>
> **MURPHY ORLANDO LLC**
> *Attorneys for Defendants the City of Trenton, Constance Ludden, the Township of Lawrence, and Susan E. McCloskey*
>
> By:  /s/ *John W. Bartlett*
>         John W. Bartlett, Esq.

Dated: June 20, 2025